UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PUGET SOUNDKEEPER ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>APM TERMINALS TACOMA, LLC, et al.,<br><br>Defendants. | CASE NO. C17-5016 BHS<br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND DENYING PLAINTIFF'S THIRD MOTION FOR LEAVE TO AMEND COMPLAINT |

This matter comes before the Court on Cross Defendant APM Terminals Tacoma, LLC's ("APM") motion to dismiss crossclaim, Dkt. 134; SSA Marine, Inc., and SSA Terminals, LLC's (collectively "SSA") motion to dismiss, Dkt. 136; and Plaintiff Puget Soundkeeper Alliance's ("Soundkeeper") third motion for leave to amend, Dkt. 146. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants the motions to dismiss and denies the motion for leave to amend.

**I.  RELEVANT PROCEDURAL AND FACTUAL BACKGROUND**

On June 13, 2018, Soundkeeper filed a third amended complaint ("TAC") against APM, SSA, and the Port of Tacoma ("Port"). Dkt. 109. Soundkeeper brings a citizen

suit under § 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365. *Id.*, ¶ 1. Soundkeeper alleges that APM operated a business at a location owned by the Port. *Id.*, ¶ 2. APM obtained a National Pollutant Discharge Elimination System ("NPDES") permit from the State of Washington authorizing discharges of pollutants into navigable waters. *Id.*, ¶¶ 1, 25. Soundkeeper alleges that APM violated that permit, which in turn violates the CWA. *Id.*, ¶¶ 59–62. Soundkeeper asserts that the Port, as owner of the property, is also responsible for the alleged violations of the permit. *Id.*, ¶¶ 63–67. To complicate matters further, APM terminated its lease with the Port, and the Port allegedly entered a lease with SSA. *Id.*, ¶¶ 26–29. Soundkeeper asserts that the CWA violations are ongoing and that SSA is responsible for these violations. *Id.*, ¶¶ 68–71.

On August 3, 2017, Soundkeeper sent SSA a 60-day "Notice of Intent to Sue" letter regarding alleged violations of the NPDES permit at the property. *Id.*, ¶ 7, Ex. 4. The letter provides in part as follows:

> Should SSA commence industrial operations and/or discharge stormwater at the facility, the [existing] Permit requires SSA to correct the deficiencies identified below. Soundkeeper hereby provides notice of its intent to sue for these violations of the [existing] Permit.
> ***
> Soundkeeper believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. We intend, at the close of the 60-day notice period and upon SSA's commencement of industrial activity on this site, to file a citizen suit against SSA under Section 505(a) of the Clean Water Act

*Id.*, Exh. 4.

SSA concedes that its parent corporation entered a lease for the property on October 2, 2017. Dkt. 136 at 5. While SSA disputes that it operated or leased the

ORDER - 2

property, for the purposes of this order the Court will accept as true Soundkeeper's allegation that SSA bears liability for CWA violations as of October 2, 2017. TAC, ¶ 34.

On July 18, 2018, the Port filed an amended answer and asserted a crossclaim against APM. Dkt. 120. The Port alleges that it entered into a lease agreement with APM and asserts that "[t]o the extent Soundkeeper establishes any violations of the National Pollutant Discharge Elimination System permit(s) issued to [APM] or the Port, that violation is a breach of the parties' lease." *Id.* at 15–16. The Port also asserts joint and several liability. *Id.* at 16.

On August 8, 2018, APM moved to dismiss the Port's crossclaim. Dkt. 134. On August 13, 2018, SSA moved to dismiss Soundkeeper's claim. Dkt. 136. On September 4, 2018, Soundkeeper responded to SSA's motion and filed a motion to amend the complaint. Dkts. 144, 146. On September 17, 2018, SSA and the Port responded to Soundkeeper's motion to amend. Dkts. 152, 154. On September 21, 2018, Soundkeeper replied to its motion and SSA replied to its motion. Dkts. 160, 161. On October 22, 2018, the Port responded to APM's motion. Dkt. 171. On October 26, 2018, APM replied to its motion. Dkt. 173.

## II. DISCUSSION

**A.     SSA's Motion**

SSA moves to dismiss because (1) "at no time has [SSA] operated, leased, or had a fee interest in the Facility;" (2) Soundkeeper failed to give adequate notice; and (3) "involving [SSA] in this dispute fails to accomplish the purpose for which the CWA citizen suit was enacted." Dkt. 136 at 2. The Court will only address the adequacy of

Soundkeeper's notice because it is dispositive, and the Court lacks jurisdiction to consider the other issues.

Section 505(a) of the Clean Water Act states that "any citizen may commence a civil action on his own behalf against any person . . . who is alleged to be in violation of" the conditions of a permit or has failed to obtain a permit. 33 U.S.C. § 1365(a)(1). SSA argues that Soundkeeper's notice is deficient because SSA could not be in violation of a permit before it became a tenant on the property. Dkt. 136 at 12–14. Soundkeeper responds that "[t]his Court has already rejected SSA's 'anticipatory notice' argument in this case when the Port raised it and should do so again here." Dkt. 144 at 9. Soundkeeper misconstrues the Court's prior order. In that order, the Court stated as follows:

> this case raises the question of whether, after a defendant receives a proper notice letter alleging that it has failed to prepare and implement an adequate [remedial action], the issuance of a new permit number under the same general NPDES permit requires the sending of a new notice letter.

Dkt. 107 at 12. The Court concluded that the original notice letter was sufficient. *Id.* at 14–15. While this conclusion relates to anticipatory notice in *one* specific factual scenario, the Court rejects Soundkeeper's proposition that the conclusion supports anticipatory notice in *every* factual scenario.

For example, consider the factual scenario involving the current parties. Soundkeeper has notice of an entity that will assume operations at a facility that it alleges is currently violating the CWA. Soundkeeper sends that entity a 60-day notice of its intent to sue exactly sixty days before the entity is scheduled to assume operations at the

location.  If this notice is sufficient, then Soundkeeper could have filed suit the day that the entity assumes operations without allowing that entity any time to correct the alleged violations.  Soundkeeper's position in untenable and it fails to cite any authority for such a proposition.  Moreover, this proposition violates the purpose of the notice requirement, which "is to ensure that the defendant and/or government enforcement authorities are given some pre-suit notice so that they have an opportunity to address the matter *before* a lawsuit is filed." *Citizens for a Better Env't-Cal. v. Union Oil Co. of Cal.*, 861 F. Supp. 889, 912 (N.D. Cal. 1994), *aff'd*, 83 F.3d 1111 (9th Cir. 1996) (citing *Hallstrom v. Tillamook Cty*, 493 U.S. 20, 30–31 (1989)).

Under Soundkeeper's proposition, an entity would have no time to address the alleged violation before a lawsuit is filed if the entity was welcomed to the property in question with a copy of a complaint.  In the absence of any compelling policy reasons to the contrary, and Soundkeeper has provided none, the Court will adhere to the Supreme Court's holding "that the notice and 60–day delay requirements are mandatory conditions precedent to commencing suit under the [applicable] citizen suit provision; a district court may not disregard these requirements at its discretion." *Hallstrom*, 493 U.S. at 31.  Therefore, the Court grants SSA's motion to dismiss because the Court lacks jurisdiction over Soundkeeper's claim based on Soundkeeper's failure to provide adequate notice.

This conclusion also dooms Soundkeeper's motion for leave to amend because the amended complaint relies on the same notice letter.  *See* Dkt. 146-2 at 5, ¶ 7.  Thus, it would be futile to amend to add SSA's parent corporation based on the same inadequate notice.  *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1103 (9th Cir. 2018) ("leave to

amend need not be granted when any amendment would be an exercise in futility")
(internal quotations omitted).  Accordingly, the Court denies Soundkeeper's third motion for leave to amend.

**B.     The Port's Motion**

The Port moves to dismiss APM's crossclaim for failure to state a claim "because [the claim] fails to comply with even the most basic pleading requirements of Rule 8." Dkt. 134 at 1.

**1.     Standard**

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  Material allegations are taken as admitted and the claim is construed in the nonmoving party's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983).  To survive a motion to dismiss, the claim does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

**2.     Merits**

Upon review of the crossclaim, the Court agrees with APM that the Port's crossclaim fails the basic pleading requirements.  For example, a claim must contain "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P.

8(a)(1). Although the Port concedes that the claim does not explicitly allege jurisdiction, the Port argues that it met its pleading requirement because it put ATM "on notice of the basis for jurisdiction through non-conclusory statements." Dkt. 171 at 5. To support this argument, the Port cites a district court case out of the Northern District of Illinois that addressed the question of whether personal jurisdiction was based on general or specific jurisdiction. *Id.* (citing *Repository Techs. v. Sys. Consultants, Inc.*, No. 02-C-8640, 2003 WL 21148340, at *6 (N.D. Ill. May 16, 2003)). Even if this case was persuasive for the proposition of providing sufficient notice, which it is not, it is easily distinguishable because ATM is challenging the adequacy of the Port's notice as to subject-matter jurisdiction. Not only are personal and subject-matter jurisdiction entirely different grounds for dismissal, but the latter is so important that any court **must** dismiss for lack of subject-matter jurisdiction at any time. Fed. R. Civ. P 12(h)(3); *3123 SMB LLC v. Horn*, 880 F.3d 461, 470 (9th Cir. 2018) (courts "have an independent obligation to ensure that subject-matter jurisdiction exists"). In the absence of any allegation asserting subject-matter jurisdiction, the Court is unable to ensure that such jurisdiction exists. While the Port presents meritorious arguments in favor of such jurisdiction, the Port may not rewrite its claim through its response brief. Therefore, the Court grants APM's motion to dismiss.

In the event the court finds that dismissal is warranted, the court should grant the claimant leave to amend unless amendment would be futile. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). The Court is unable to conclude that any amendment would be futile. Therefore, the Court grants the Port leave to amend.

### III. ORDER

Therefore, it is hereby **ORDERED** that APM's motion to dismiss crossclaim, Dkt. 134 and SSA's motion to dismiss, Dkt. 136, are **GRANTED** and Soundkeeper's third motion for leave to amend, Dkt. 146, is **DENIED**. The Port may file an amended answer no later than February 8, 2019.

Dated this 31st day of January, 2019.

BENJAMIN H. SETTLE
United States District Judge