UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PUGET SOUNDKEEPER ALLIANCE,

    Plaintiff,

    v.

SSA TERMINALS, LLC, et al.

    Defendants.

CASE NO. C17-5016 BHS

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants SSA Terminals (Tacoma), LLC ("SSATT") and SSA Terminals, LLC's ("SSAT") (collectively "SSA") motion for summary judgment. Dkt. 317. The Court has considered the briefings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I.  FACTUAL & PROCEDURAL BACKGROUND

**A.  Overview**

As the parties are familiar with the extensive history of this case, the Court provides the following overview. This case is a citizen suit brought under Section 505 of the Clean Water Act as amended, 33 U.S.C. § 1365. Plaintiff Puget Soundkeeper Alliance

1  ("Soundkeeper") seeks, *inter alia*, a declaratory judgment and injunctive relief for alleged

2  violations of the CWA and the National Pollutant Discharge Elimination System

3  ("NPDES") permit authorizing discharges of pollutants from Defendants the Port of

4  Tacoma and SSA's facility to navigable waters. Dkt. 254, Fourth Amended Complaint

5  ("FAC"), ¶ 1.

6  At issue in this case are industrial stormwater discharges at a large marine cargo

7  terminal ("Terminal") used for ship unloading and cargo distribution. The Port owns the

8  137-acre Terminal at issue in this matter. While the majority of the Terminal is not at

9  issue, the parties dispute a 12.6-acre section commonly referred to as the "Wharf." Here,

10  five enormous ship-to-shore cranes load and unload large shipping containers from

11  docked vessels. The Wharf is depicted below, as provided in the Port's motion for partial

12  summary judgment:



Dkt. 176 at 2.

Soundkeeper alleges, in part, that SSA is in violation of the NPDES permits that authorize discharges of stormwater associated with industrial activity and thus are in violation of Section 505 of the CWA. FAC, ¶ 65.

**B.    Procedural History**

On January 9, 2017, Soundkeeper filed a complaint against Defendant APM Terminals Tacoma, LLC ("APMT") alleging ongoing violations of APMT's NPDES permit. Dkt. 1, ¶ 1. APMT was the lessee of the Terminal at the time of the initial complaint, and on November 28, 2017, Soundkeeper filed a second amended complaint adding the Port of Tacoma as a defendant, stating that the Port owns the facility and that APMT leases the facility. Dkt. 75.

On June 13, 2018, Soundkeeper filed a third amended complaint adding the Port's new tenants, Defendants SSA Marine, Inc. and SSAT. Dkt. 109. On June 4, 2019, the Court granted Soundkeeper's motion for leave to amend, Dkt. 253, and Soundkeeper filed its Fourth Amended Complaint, dropping APMT and SSA Marine, Inc. as parties and adding SSATT. Dkt. 254. Soundkeeper has settled all of its claims in this case against APMT via a consent decree. Dkt. 224.

The Port moved for partial summary judgment as to Soundkeeper's claims arising from stormwater discharges from the Wharf. Dkt. 176. Soundkeeper then filed a motion for partial summary judgment, arguing that (1) the Port is liable for APMT's violations, (2) the Port is liable for Level 3 corrective action requirements that occurred in 2013 and 2015, (3) the Port is liable for failing to monitor discharges from the Wharf, (4) the Port's

stormwater pollution prevention plans ("SWPPP") are inadequate, (5) Soundkeeper has standing to bring its claims, and (6) the Court has subject matter jurisdiction over the alleged violations. Dkt. 196. The Port responded and filed a cross-motion for summary judgment to dismiss Soundkeeper's claim against it in its entirety. Dkt. 210. SSA joined in the Port's opposition to Soundkeeper's motion. Dkt. 209.

The Court granted the Port's motion for partial summary judgment, Dkt. 304, and granted in part and denied in part the cross-motions for summary judgment, Dkt. 305.

### 1.     Relevant Court Orders

The Port filed a motion for partial summary judgment requesting that the Court dismiss Soundkeeper's "claims arising from stormwater discharges to the Wharf." Dkt. 176 at 18. After extensive briefing from the parties and amici, the Court granted the Port's motion. Dkt. 304. The Port persuasively argued that stormwater discharges from the Wharf are not "discharges associated with industrial activities" pursuant to the Environmental Protection Agency's regulations (40 C.F.R. § 122.26(b)(14)(viii)) and are therefore not subject to the federal NPDES program or citizen suit enforcement of the NPDES program.

EPA has empowered the Washington State Department of Ecology to administer the NPDES program in Washington. *See* 39 Fed. Reg. 26,061 (July 16, 1974); RCW 90.48.260. Under state law, Ecology also administers the State Water Pollution Control Act (RCW Chapter 90.48) which makes it illegal for "any person" to discharge pollutants into waters of the state without a permit. RCW 90.48.080, 90.48.160. For industrial stormwater, Ecology decided to enforce both state and federal requirements using a

general permit that covers a broad range of activities. *See* WAC 173-226-010 (regulation establishing "state general permit program" and explaining that "[p]ermits issued under this chapter are designed to satisfy the requirements for discharge permits under [the CWA] . . . and the state law governing water pollution control (chapter 90.48 RCW)").

Ecology's Industrial Stormwater General Permit ("ISGP") reflects this dual state and federal function. As the ISGP states, it is both a "National Pollution Discharge Elimination System (NPDES) and State Waste Discharge General Permit" that was issued "[i]n compliance with the provisions of The State of Washington Water Pollution Control Law Chapter 90.48 Revised Code of Washington and The Federal Water Pollution Control Act (The Clean Water Act) Title 33 United States Code, Section 1251 et seq." Dkt. 51-1 at 2.

The Court thus had to determine the scope of the ISGP issued to the Port regarding industrial activities at the Wharf. The Court concluded that the ISGP clearly and unambiguously relied on the federal regulations, which includes the exclusionary language in part (viii) that limits industrial activities to "only those portions" of transportation facilities. *See* Dkt. 304 at 20–22. The Court rejected Soundkeeper's argument that transportation facilities are subject to regulation based upon the federal regulation's non-exhaustive preamble and rejected Ecology's argument that loading and unloading of containers at the Wharf constitute industrial activities subject to regulation.

In sum, the Court agreed with the Port that "equipment maintenance is not an industrial activity under 40 C.F.R. 122.26(b)(14)(viii) or the corresponding ISGP" and

1 granted the Port's motion for partial summary judgment regarding claims involving discharges from the Wharf. *Id*. at 23.

The Court also agreed with the Port's cross-motion for summary judgment, granting the Port's motion and dismissing Soundkeeper's entire claim against the Port. Dkt 305. While the Court concluded that Soundkeeper had standing to bring claims against the Port, *id.* at 10–12, the Court agreed with the Port that it is not jointly liable for alleged violations that occurred during APMT's tenancy, including generic permit violations and Level 3 corrective action violations that occurred in 2013 and 2015, *id.* at 12–15.

The Court also denied Soundkeeper's cross-motion for summary judgment regarding its claim that the Port is liable for failing to monitor discharges from the Wharf and failing to identify the Wharf in its SWPPP because the Court had previously concluded that the Wharf is not covered by the ISGP. *Id.* at 15; *see also* Dkt. 304. Finally, the Court granted the Port's cross-motion as to whether it was violating its current permit. The Court agreed with the Port that Soundkeeper could not establish any violation because the Port would not be violating its new permit until September 30, 2019 at the earliest. Dkt. 305 at 15–16. Even if the Port was in violation of the agreed order, the Court concluded that Soundkeeper failed to establish that violation of an agreed order is grounds for a citizen suit. Thus, the Court dismissed all claims against the Port, and the Port was terminated as a Defendant.

### 2. Instant Motion for Summary Judgment

On February 4, 2021, SSA moved for summary judgment, arguing that under the Court's previous Orders described herein, Soundkeeper cannot maintain its claims against them. Dkt. 317. The Port joined SSA in their motion. Dkt. 321. On February 22, 2021, Soundkeeper responded, opposing SSA's motion and requesting a Rule 56(d) continuance in the alternative. Dkt. 322. On February 26, 2021, SSA replied, Dkt. 327, and on March 24, 2021, SSA and the Port filed a notice of supplemental authority, Dkt. 332.[1]

### C. Relevant Facts

On August 3, 2017, Soundkeeper sent SSAT and SSA Marine a 60-day "Notice of Intent to Sue" letter regarding alleged violations of the NPDES permit at the Terminal. Dkt. 109, ¶ 7, Ex. 4. SSATT commenced operations at the Terminal on October 2, 2017. FAC, ¶ 2. On June 13, 2018, Soundkeeper filed its third amended complaint. Dkt. 109. SSAT and SSA Marine then moved to dismiss Soundkeeper's claim, arguing, in part, that Soundkeeper failed to give adequate notice. Dkt. 136. The Court granted the motion to dismiss, concluding that Soundkeeper's anticipatory notice letter was inadequate. Dkt. 217 at 3–5.

Following the dismissal of its claims against SSAT and SSA Marine, Soundkeeper sent a new 60-day notice letter to SSA on February 28, 2019. Dkt. 246-1 at 116. On May 2, 2019, Soundkeeper then filed its fourth motion to amend its complaint seeking to bring

---

[1] The Port has also filed a motion for entry of Rule 54(b) judgment, Dkt. 320, which the Court will address in a separate order.

1  SSA back into the case, asserting that its "claims against SSA are the same, or narrower,
2  as they were the first time this Court permitted Soundkeeper to add SSA." Dkt. 246 at 4.
3  The Court granted Soundkeeper's motion. Dkt. 253.

4  The February 2019 Notice Letter asserts that the 2015 ISGP (1) prohibits SSA
5  from discharging stormwater that causes or contributes to violations of water quality
6  standards; (2) requires SSA to apply all known and reasonable methods of prevention,
7  control, and treatment ("AKART") to all stormwater discharges, including preparation
8  and implementation of an adequate stormwater pollution prevention plan ("SWPPP") and
9  best management practices ("BMP"); (3) requires SSA to sample each distinct point of
10 discharge and record, retain, and report analyses of these samples; and (4) requires SSA
11 to develop and implement a SWPPP consistent with permit requirements. *See* Dkt. 246-1
12 at 116–122.

13 The Notice Letter further asserts that SSA is in violation of the 2015 ISGP because
14 they (1) discharge stormwater that contains elevated levels of copper, zinc, turbidity, and
15 total suspended solids; (2) have not applied AKART or BMP by operating the Facility
16 without a stormwater treatment system in place and without a stormwater treatment
17 system which treats discharges from the Wharf; (3) failed to collect discharge samples
18 from each distinct point of discharge, including in the Wharf; and (4) have failed to
19 comply with permit requirements in their SWPPP by, among others, identifying all
20 discharge points from the Wharf. *See id.* Soundkeeper additionally asserted that the 2015
21 ISGP required SSA to discharge stormwater in compliance with Condition S10 of the
22

ISGP, install a stormwater treatment system before commencing operations, and undertake a Level 3 Corrective Action. *See id.*; FAC, ¶¶ 39, 40, 42.

## II. DISCUSSION

SSA moves for summary judgment, arguing that under the Court's previous Orders, they cannot be liable for any permit violation premised on runoff from the Terminal's Wharf or any violation premised on the argument that APMT's corrective-action deadline transferred to the Port or SSA. Dkt. 317. Soundkeeper, in response, argues that questions of material fact exist as to whether SSA is in violation of water quality standards and AKART requirements. Dkt. 322. It also requests, in the alternative, that the Court grant a Rule 56(d) continuance to allow discovery as to the current conditions of the Terminal and whether SSA is in compliance with all conditions of the ISGP. *Id.*

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (nonmoving party must

1  present specific, significant probative evidence, not simply "some metaphysical doubt").
2  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence
3  supporting the claimed factual dispute, requiring a judge or jury to resolve the differing
4  versions of the truth. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 253 (1986); *T.W.*
5  *Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).
6      The determination of the existence of a material fact is often a close question. The
7  Court must consider the substantive evidentiary burden that the nonmoving party must
8  meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477
9  U.S. at 254; *T.W. Elec. Serv., Inc*., 809 F.2d at 630. The Court must resolve any factual
10 issues of controversy in favor of the nonmoving party only when the facts specifically
11 attested by that party contradict facts specifically attested by the moving party. The
12 nonmoving party may not merely state that it will discredit the moving party's evidence
13 at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W.*
14 *Elec. Serv., Inc*., 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 256). Conclusory,
15 nonspecific statements in affidavits are not sufficient, and missing facts will not be
16 presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.    Merits**

    **1.    Violations of Water Quality Standards**

The Clean Water Act imposes liability on any person who discharges pollutants from a facility in non-compliance with the issued permit. 33 U.S.C. § 1311(a). Soundkeeper alleges that SSA is in violation of the ISGP's prohibition of discharges that

contribute to a violation of Surface Water Quality Standards or Sediment Management Standards.

SSA first argues that the 2015 ISGP incorporates a presumption of compliance with water quality standards when the permittee is in full compliance with all permit conditions and is fully implementing Ecology-approved best management practices. Dkt. 317 at 9–11. However, Condition S10.B of the ISGP states that *Ecology* will presume compliance with water quality standards unless discharge monitoring data or other site-specific information demonstrates that a discharge causes or contributes to a violation of water quality standards. Dkt. 82-5 at 49. SSA has not provided any legal authority to support its argument that the Court can apply such a presumption.

But, SSA also argues that the Terminal's stormwater discharges were below the ISGP benchmarks for every parameter in every basin in the last three quarters of 2019 (including the quarter in which Soundkeeper added SSA as Defendants). Dkt. 317 at 11. This evidence shows that the stormwater discharges were not in excess of the ISGP benchmarks for the relevant periods of Soundkeeper's claim. It appears that Soundkeeper now wants to allege that the discharges are in excess of the 2020 ISGP, *see* Dkt 322 at 4, 14–16, but such a claim cannot move forward at this time because Soundkeeper has not provided SSA with the requisite 60-day notice, 33 U.S.C. § 1365(b)(1)(A).

The Court notes that it previously denied the Port's motion to dismiss the Second Amended Complaint under the Port's theory that Soundkeeper failed to provide the Port with adequate notice. Dkt. 107. The Port argued that Soundkeeper's notice letter was insufficient to place it on notice of violations of the 2015 ISGP, but the Court concluded

that Soundkeeper's anticipatory allegations regarding violations of the 2015 ISGP were duplicative of the 2010 ISGP violations Soundkeeper asserted against the Port. *Id.* at 11–15. This motion is the first instance of Soundkeeper asserting violations of the 2020 ISGP, and Soundkeeper may not pursue these new claims without notice. *See Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 31 (1989) ("the notice and 60–day delay requirements are mandatory conditions precedent to commencing suit under the [applicable] citizen suit provision; a district court may not disregard these requirements at its discretion").

Soundkeeper's claims are limited to those of the February 2019 Notice Letter, i.e., that "SSA discharges stormwater that contains elevated levels of copper, zinc, turbidity, and total suspended solids" in violation of Condition S10.A of the 2015 permit. Dkt. 246-1 at 117–18. Soundkeeper has not presented evidence to create a dispute of material fact that SSA was in violation of the 2015 ISGP. Specifically, Soundkeeper's expert, Dr. Richard Horner, fails to create a genuine dispute of material fact. He opines that the discharges from the third quarter of 2017 through the first quarter of 2019 "*have the potential* to cause or contribute to exceedances of the state's water quality criteria in the receiving water for those discharges." Dkt. 323, ¶ 13 (emphasis added). Dr. Horner does not opine that SSA's discharges are actually in violation of the ISGP's prohibition of discharges that cause or contribute to violations of water quality standards. Rather, he speculates that the discharges could cause or contribute to the violations—this is insufficient to defeat a motion for summary judgment. *See Matsushita*, 475 U.S. at 586 (the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts").

Soundkeeper mischaracterizes Dr. Horner's opinion to be that SSA's discharges have caused or contributed to violations of water quality in the receiving water. *See, e.g.*, Dkt. 322 at 15. Such evidence could be sufficient to create a dispute of material fact, but that is not Dr. Horner's opinion here. Soundkeeper has failed to meet its burden to create a genuine issue of material fact, and SSA is entitled to summary judgment as to the claim that they are not in compliance with water quality standards under the 2015 ISGP.

In the alternative, Soundkeeper argues that a Rule 56(d) continuance is necessary. *Id.* at 18–21. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may defer considering the motion, deny the motion, or allow time to obtain affidavits or declarations or to take discovery. Fed. R. Civ. P. 56(d). The nonmovant must show that "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). When confronted with a Rule 56(d) motion, the court may "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

Soundkeeper has provided the requisite declaration, *see* Dkt. 324, but the Court does not agree that a Rule 56(d) continuance is necessary here. Soundkeeper seeks discovery to see if SSA is in compliance with all conditions of the ISGP in order to refute the presumption of compliance with water quality standards. But the Court has determined that only Ecology is entitled to make the presumption. Additional discovery

is not necessary in order to determine whether SSA is in violation of the 2015 ISGP's prohibition of discharges that cause or contribute to violations of water quality standards. The non-speculative evidence is that SSA is not. Soundkeeper's request for a Rule 56(d) continuance is DENEID.

SSA's Motion for Summary Judgment on this claim is therefore GRANTED, and it is DISMISSED with prejudice.

### 2. Compliance with AKART Requirements

Soundkeeper also alleges that SSA is in violation of the 2015 ISGP condition which requires SSA to apply AKART to stormwater discharges prior to discharging. SSA asserts that because Ecology has approved their treatment system and issued a notice of compliance to SSA, they have implemented the requisite AKART requirements as a matter of law. Dkt. 317 at 11–12.

Soundkeeper, in response, argues that the Court must make its own determination and may not adopt Ecology's position here. Dkt. 322 at 16–18. It further asserts that there are questions of fact as to whether SSA is fully implementing AKART methods and in the alternative requests a Rule 56(d) continuance. *Id.* at 18–21.

Unlike Condition S10.B of the ISGP which states Ecology will presume compliance with water quality standards, the Court may assume compliance with AKART requirements here because Ecology has endorsed the AKART plan. AKART is determined through the submittal of an engineering report by the facility, and its subsequent review and approval by Ecology. Dkt. 211-53 at 18, 20. Ecology confirmed

1  that "[t]he engineering report submittal and review process in essence defines the

2  AKART process by looking at treatment alternatives and associated costs." *Id.* at 18.

3       SSA and the Port's AKART measures have been reviewed and approved by

4  Ecology as detailed in SSA's reply. Dkt. 327 at 3–4.  Ecology has found that SSA and the

5  Port are in full compliance with the October 2017 Agreed Order, which identified the

6  criteria and procedures Ecology would follow in rendering an AKART determination.

7  *See* Dkt. 318, Ex. 2. The uncontroverted evidence is that SSA and the Port have

8  implemented AKART and that they have thus complied with the requirement of the 2015

9  ISGP to do so. This is fatal to Soundkeeper's claim. *See Van Zanten v. City of Olympia*,

10 No. C10-5216-JCC, 2011 WL 5299492, at *5 (W.D. Wash. Nov. 2, 2011).

11      Soundkeeper's arguments that there are material disputes of fact precluding

12 summary judgment do not alter the Court's determination. For example, Soundkeeper

13 "contends" that SSA is in violation of Condition S10.C which requires the

14 implementation of AKART methods, but offers no evidence to support this contention.

15 Dkt. 322 at 16–18. Dr. Horner opines that SSA is out of compliance with water quality

16 standards and therefore SSA cannot comply with the AKART requirements. Dkt. 323,

17 ¶¶ 22, 23. But this is a conclusory assertion. Further, he has not been on site at the

18 Terminal since 2018 and has no up-to-date knowledge of SSA's AKART practices. *Id.*

19 ¶¶ 25–27. Soundkeeper has not offered any evidence beyond speculation that SSA is not

20 implementing AKART. It is not SSA's burden to show that it is in compliance with the

21 ISGP, it is Soundkeeper's burden to show a violation. Upon a review of the evidence, the

22 Court determines that SSA has implemented AKART as required by the 2015 ISGP.

And Soundkeeper's request for a Rule 56(d) continuance fares no better. As the Court has determined, Soundkeeper's claims against SSA are limited to the alleged violations of the 2015 ISGP—not the 2020 ISGP. Soundkeeper's request to conduct a site visit to assess the implementation of SSA's *current* AKART methodologies and best management practices has no bearing on whether SSA has implemented AKART in compliance with the 2015 ISGP. The sought-after discovery is not essential to oppose SSA's summary judgment motion here. *See Fam. Home & Fin. Ctr.*, 525 F.3d at 827. Soundkeeper's request for a Rule 56(d) continuance is DENIED.

Summary judgment is therefore GRANTED, and this claim is DISMISSED with prejudice.

**3. Scope of Coverage**

SSA persuasively argues that Soundkeeper's scope of coverage claims of the 2015 ISGP[2] should be dismissed in light of the Court's previous Orders determining that the Wharf is not within the scope of the Permit. Dkt. 317 at 12–15. Soundkeeper alleges that SSA violated the ISGP by operating a stormwater treatment system which does not treat discharges from the Wharf, by failing to describe in their SWPPP custom deck drain filter inserts installed on the Wharf, identify drainage on the Wharf, and collect discharge samples from the discharge points in the Wharf. But as the Court previously concluded, the Wharf is not covered by the ISGP. *See* Dkt. 304.

---

[2] Soundkeeper's claims based on the scope of coverage of the ISGP are detailed in Sections I(B), I(C), and I(D) of its Notice Letter. Dkt. 246-1 at 119–121.

1        Soundkeeper's arguments in response do not persuade the Court otherwise. It

2 asserts that its claims "which rely on the scope of coverage issue should not be dismissed

3 because Soundkeeper may yet appeal these issues." Dkt. 322 at 21. It asks the Court to

4 not dismiss the claims which are dependent upon the scope of the ISGP so that

5 Soundkeeper may later pursue these claims on appeal. Soundkeeper provides no legal

6 authority to support this argument, and the Court will apply the law of this case to the

7 claims it has asserted against SSA. If Soundkeeper wishes to pursue an appeal of the

8 Court's previous Orders determining the scope of the ISGP's coverage, it may do so. But

9 a hypothetical appeal is not enough to preclude the Court from granting summary

10 judgment on SSA's substantially similar scope of coverage claims based on the Court's

11 previous Orders.

12       Additionally, Soundkeeper argues that the scope of coverage under the 2020 ISGP

13 (which is currently in effect) is still pending before the Pollution Control Hearings Board

14 and so SSA's motion should be denied.[3] But as SSA highlights, *see* Dkt. 327 at 13, and

15 the Court has concluded, the case presently before the Court does not involve allegations

16 arising under the 2020 ISGP. Even so, the Pollution Control Hearings Board has adopted

17 this Court's reasoning that the Wharf is not within the scope of coverage. *See* Dkt. 332.

18       Therefore, SSA's Motion for Summary Judgment on Soundkeeper's claims

19 connected with the Wharf is GRANTED, and the claims are DIMISSED with prejudice.

---

[3] Since Soundkeeper has filed its response, the Pollution Control Hearings Board has resolved the appeal on the 2020 ISGP's scope of coverage. *See* Dkt 332.

ORDER - 17

### 4. Remaining Claims

In its Notice Letter, Soundkeeper asserts that SSA failed to sample discharges from Outfall WS2 during the fourth quarter of 2017. Dkt. 246-1 at 120. SSA argues that the Port sampled every monitoring location on October 12, 2017 and submitted that data to Ecology in January 2018. Dkt. 317 at 15. They assert that the Port did not report the data in a Discharge Monitoring Report because Ecology had not yet enabled such reporting under the Port's new permit. *Id.* Soundkeeper does not respond to this argument.

A party's failure to respond to a motion for summary judgment does not permit the court to grant the motion automatically. *See Heinemann v. Satterberg*, 731 F.3d 914, 916 (9th Cir. 2013) ("[A] motion for summary judgment may not be granted based on a failure to file an opposition to the motion."). Rather, the court may only "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3); *see Heinemann*, 731 F.3d at 916. Where facts asserted by the moving party in an unopposed motion are concerned, the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2); *see Heinemann*, 731 F.3d at 917.

The Court concludes that discharges from Outfall WS2 were sampled during the fourth quarter of 2017 as indicated by SSA's supporting evidence. *See* Dkt. 318, Ex. 3. Soundkeeper has not presented any evidence to the contrary to create a genuine issue of material fact. SSA's motion for summary judgment on this claim is therefore GRANTED, and it is DISMISSED with prejudice..

1       Soundkeeper also alleges in its Fourth Amended Complaint that SSA failed to

2 complete the corrective action responses as required by the ISGP. FAC, ¶ 42. SSA argues

3 that the Court previously decided this issue in its previous Order, Dkt. 305. Dkt. 317 at

4 15–16. The Court concluded that the earliest a corrective action would be taken would be

5 by September 20th of the year following three quarterly violations, which would be

6 September 30, 2019 under the Port's new 2017 permit. Dkt. 305 at 16 & n.2.

7 Additionally, SSA argues that Soundkeeper failed to identify this allegation in its Notice

8 Letter. Dkt. 317 at 16. Soundkeeper again does not respond to this argument.

9       Under either theory, the Court concludes that SSA is entitled to summary

10 judgment. First, Soundkeeper did not give adequate notice of this claim involving the

11 purported corrective action responses it alleges that SSA (and the Port) were required to

12 make. *See Hallstrom*, 493 U.S. at 31. Second, the Court has concluded that the earliest a

13 corrective action could be taken was September 30, 2019. Dkt. 305 at 16 & n.2. SSA

14 asserts, and Soundkeeper does not refute, that its stormwater treatment system was

15 operational by June 13, 2019. *See* Dkt. 318, ¶ 4. SSA's motion for summary judgment on

16 this claim is therefore GRANTED, and it is DISMISSED with prejudice.

17       In sum, Soundkeeper has failed to create a genuine issue of fact as to whether SSA

18 is in violation of the 2015 ISGP prohibition of discharging stormwater that causes or

19 contributes to violations of water quality standards or the 2015 ISGP's requirement to

20 apply AKART methodology. All of Soundkeeper's remaining claims fall within the

21 scope of this Court's previous Orders determining the scope of the 2015 ISGP and cannot

22

be maintained as a matter of law. Soundkeeper's claims against SSA are DISMISSED with prejudice.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Defendants SSATT and SSAT's motion for summary judgment, Dkt. 317, is **GRANTED**. The Clerk shall terminate SSATT and SSAT as defendants.

Dated this 15th day of September, 2021.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge