UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PUGET SOUNDKEEPER ALLIANCE,<br><br>    Plaintiff,<br><br>v.<br><br>APM TERMINALS TACOMA LLC, et al.,<br><br>    Defendants. | CASE NO. C17-5016 BHS<br><br>ORDER ON COUNTERCLAIM DEFENDANT'S MOTION TO DISMISS |
| PORT OF TACOMA,<br><br>    Crossclaim Plaintiff/<br>    Counterclaim Defendant,<br><br>v.<br><br>APM TERMINALS TACOMA LLC,<br><br>    Crossclaim Defendant/<br>    Counterclaim Plaintiff,<br><br>v.<br><br>DON ESTERBROOK<br><br>    Counterclaim Defendant. | |

ORDER - 1

This matter comes before the Court on Counterclaim Defendant Don Esterbrook's motion to dismiss. Dkt. 344. The Court has considered the briefing filed in support of and in opposition to the motion and the remainder of the file and hereby rules as follows.

## I. PROCEDURAL HISTORY

Counterclaim Plaintiff APM Terminals Tacoma LLC ("APMT") leased a terminal portion of the Counterclaim Defendant Port of Tacoma's ("the Port") property from March 1983 to October 2, 2017. Dkt. 135-1. On November 28, 2017, Plaintiff Puget Soundkeeper Alliance ("Soundkeeper") filed a complaint against APMT and the Port alleging numerous violations of the Clean Water Act ("CWA"). Dkt. 75. Soundkeeper alleged that the Port was liable for CWA violations that occurred during APMT's tenancy and after APMT terminated the lease agreement.[1] *Id.*

On June 25, 2019, the Port filed an amended answer asserting crossclaims against APMT for breach of contract, contractual indemnity, equitable indemnity, negligent misrepresentation, fraudulent misrepresentation, and declaratory judgment. Dkt. 260 at 27–34. APMT moved to dismiss the crossclaims, Dkt. 265, and the Court denied the motion as to the Port's breach of contract, breach of the duty of good faith and fair dealing, contractual indemnity, and equitable indemnity claims and granted the motion as to the Port's remaining claims, Dkt. 306.

---

[1] On November 17, 2020, the Court granted in part and denied in part Soundkeeper's motion for partial summary judgment, Dkt. 196, and the Port's cross-motion for partial summary judgment, Dkt. 210. *See* Dkt. 305. The Court concluded that the Port was not jointly liable for alleged violations that occurred during or after APMT's tenancy.

On December 11, 2020, APMT filed its answer to the Port's crossclaim and counterclaims against the Port for conversion, fraud, breach of contract, and breach of the duty of good faith and fair dealing. Dkt. 309. APMT's counterclaims "arise out of the Port's wrongful draw on a letter of credit through a Sight Draft" executed by Don Esterbrook, the Port's Deputy Chief Executive Officer, in May 2018. Dkt. 329 at 3. On January 4, 2021, the Port filed its answer to the counterclaims. Dkt. 312.

On March 4, 2021, APMT moved to amend its counterclaims and to add Esterbrook as a counterclaim defendant, alleging claims of conversion and fraud and seeking punitive damages. Dkt. 329. The Court granted the motion, concluding that the Article 5's one-year statute of limitations is inapplicable to APMT's proposed claims against Esterbrook and that its proposed amendment would not be futile. Dkt. 334.

On August 26, 2021, Esterbrook moved to dismiss APMT's claims against him. Dkt. 344. On September 13, 2021, APMT responded. Dkt. 353. On September 17, 2021, Esterbrook replied. Dkt. 358.

## II.   FACTUAL BACKGROUND

In 1983, the Port and Tacoma Terminals, Inc. entered into a Terminal Operating and Lease Agreement (the "Lease") for the use of certain marine terminal facilities owned by the Port. Dkt. 335, ¶ 7.[2] Tacoma Terminals assigned its interest in the Lease to Maersk Pacific Ltd. in 2000, and APM Terminals Pacific Ltd. (formerly known as Maersk Pacific) assigned the Lease to APMT effective October 25, 2014. *Id.* ¶¶ 9, 11.

---

[2] The paragraphs cited to in Dkt. 335 refer to APMT's amended counterclaims against the Port and Esterbrook, beginning on page 17.

ORDER - 3

Between 1983 and 2014, the Port and APMT's predecessors amended the Lease three times through addenda. *Id.* ¶¶ 8, 10. In 2014 and 2015, the Port and APMT agreed to further amendments through five additional addenda. *Id.* ¶ 12; *see also* Dkt. 335-1, Exs. A–I.

Under the terms of the Lease, the tenant (i.e., APMT) was required to provide a form of security to the Port to provide the Port with monthly income if the tenant defaulted under the Lease while the Port sought a replacement tenant. Dkt. 335, ¶ 14; *see also* Dkt. 335-1, Ex. A, at 12. The Lease allowed for the security to be in the form of a letter of credit, guaranty, or bond. APMT arranged for the issuance of a letter of credit by the New York branch of Svenska Handelsbanken Irrevocable Standby Letter of Credit No. S13075 (the "LOC") in favor of the Port in the amount of $7,208,220. Dkt. 335, ¶¶ 14–15.

APMT alleges that it exercised its contractual right to terminate the Lease effective October 2, 2017, in accordance with the Seventh Addendum to the Lease. *Id.* ¶ 20. In connection with its termination, APMT alleges it paid the Port a "Pier Expansion Amortization Payment" in the amount of $5,742,500.00 as required by section 4(b) of the Seventh Addendum. *Id.* ¶ 21. It asserts that it was not required to make any other payments under the Lease. *Id.* ¶ 22. APMT further alleges that the Port secured a new tenant to replace it without the loss of any rental income under the terms of the Lease. *Id.* ¶ 24.

On May 23, 2018, the Port sent a Sight Draft to Svenska Handelsbanken to draw on the full amount of the LOC. *Id.* ¶ 30; *see also* Dkt. 335-1, Ex. K. Esterbrook executed

the Sight Draft as the Port's Deputy Chief Executive Officer. Dkt. 335, ¶ 33. APMT alleges that the Port falsely certified that APMT had failed to perform one or more of the terms, conditions, or obligations of the Lease and that Esterbrook signed the Sight Draft knowing that it was false. *Id.* ¶¶ 32, 34.

APMT sued Esterbrook for conversion, alleging that as an officer of the Port he is personally liable for conversion, and for fraud, alleging that Esterbrook's Sight Draft certification was false. *Id.* ¶¶ 76–82 (claim for conversion), ¶¶ 83–94 (claim for fraud).

### III.  DISCUSSION

Esterbrook moves to dismiss APMT's claims against him, arguing that its claims are barred by Article 5's one-year statute of limitations and that its fraud claim and claim for punitive damages fail as a matter of law.

**A.  Standard**

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

**B.  Statute of Limitations**

Esterbrook argues that all of APMT's claims against him are barred by the one-year statute of limitations found in Article 5 of the Uniform Commercial Code (as codified in RCW Chapter 62A.5). Dkt. 344 at 16–21. Article 5 "applies to letters of credit and to certain rights and obligations arising out of transactions involving letters of credit." RCW 62A.5-103(a). "An action to enforce a right or obligation arising under [Article 5] must be commenced within one year after the expiration date of the relevant letter of credit or one year after the cause of action accrues, whichever occurs later." RCW 62A.5-115.

In granting APMT leave to amend, the Court previously concluded that Article 5's statute of limitations was inapplicable to its claims against Esterbrook as alleged. Because of Washington's limited case law on Article 5's statute of limitations, the Court thoroughly discussed *Alhadeff v. Meridian on Bainbridge Island, LLC*, 167 Wn.2d 601 (2009), and summarizes that discussion again here. In *Alhadeff,* the Washington Supreme Court determined the meaning and scope of the phrase, "an action to enforce a right or obligation arising under [Article 5]." 167 Wn.2d at 613 (quoting RCW 62A.5-115). In reviewing Article 5 and the comments thereto, the *Alhadeff* court concluded that "the Article 5 warranty creates an auxiliary cause of action to protect the applicant from wrongful drawings by the beneficiary in cases where the applicant lacks a common law contractual basis for his claims." *Id.* at 615. The statute of limitations applies to this auxiliary cause of action. *Id.*

As such, the question of whether Article 5's auxiliary cause of action displaces common law claims "depends on whether [the applicant's] claims are based on an underlying contract or promise between [the beneficiary] and [the applicant], or some independent duty owed by [the beneficiary] to [the applicant]." *Id.* at 616. If there is an underlying contract or promise or an independent duty owed, then the warranty merely supplements the common law claims, and the statute of limitations does not apply to the common law claims. *Id.* If there is no underlying contract or independent duty owed, then the warranty displaces the claims, and the statute of limitations applies. *Id.*

In granting APMT leave to amend to add Esterbrook as a counterclaim defendant, the Court noted that "APMT's proposed fraud claim against Esterbrook is predicated on the contract between the Port and APMT. And its proposed conversion claim is predicated on its possessory right or interest to the cash amount that was the subject of the letter of credit." Dkt. 334 at 6 (internal citations omitted). Under the principles of *Alahdeff*, the Court concluded that Article 5's statute of limitations was not applicable to APMT's claims as alleged.

Esterbrook now cites to the UCC's Official Comment 3 to RCW 62A.5-115 in support of his argument that Article 5's statute of limitations applies to APMT's claims against him. The comment states that the one-year statute of limitations applies "only to transactions, events, obligations, or duties arising out of or associated with [a letter of credit]." RCW 62A.5-115 cmt. 3. He argues that all of the claims against him relate directly to the Port's (and his, as the Port's Deputy Chief Executive Officer) execution of the LOC and thus are subject to the one-year limitation period. He also argues that he is a

"presenter"[3] who acted on behalf of the Port, and thus Article 5 applies to any claims related to presenting the Sight Draft. *See* Dkt. 358 at 6–9.

Undoubtedly, APMT's claims against Esterbrook are related to the Sight Draft and LOC. But because Article 5 "deals only with 'certain' rights of the parties," *Alhadeff*, 167 Wn.2d at 614 (quoting U.C.C. § 5-103 cmt. 2), whether its limitations period applies to APMT's conversion or fraud claims against Esterbrook depends on whether there is an independent duty owed by Esterbrook to APMT.[4]

The Court now determines that APMT's fraud claim is displaced by the warranty and that its conversion claim is not. First, the warranty found in Article 5 specifically states that the beneficiary warrants "that there is no fraud or forgery." RCW 62A.5-110. APMT does not point to an independent duty of Esterbrook "other than those owed under the Article 5 warranty to make accurate representations." *Alhadeff*, 167 Wn.2d at 618. On the other hand, as alleged, it is plausible that Esterbrook owed a duty to APMT not to convert the cash amount that was subject to the LOC. Notably, the *Alhadeff* court considered the merits of the applicant's conversion claim after holding his claims for breach of contract, promissory estoppel, and negligence were displaced by the warranty and barred by the statute of limitations. *Compare id.* at 619 (conversion claim) *with id.* at 618–19 (displaced claims). And Washington courts have held that there may be an

---

[3] "'Presenter' means a person making a presentation as or on behalf of a beneficiary or nominated person." RCW 62A.5-102(13). A presentation "means delivery of a document to an issuer or nominated person for honor or giving of value under a letter of credit." RCW 62A.5-102(12).

[4] There is no underlying contract between Esterbrook in his personal capacity and APMT, while there is a contract between the Port (Esterbrook's employer) and APMT.

ORDER - 8

independent duty not to convert property. *See, e.g.*, *Fuji Food Prods., Inc. v. Occidental, LLC*, 6 Wn. App. 2d 1027, at *7 (2018).[5]

As such, APMT's claim for fraud against Esterbrook is time barred. Esterbrook's motion to dismiss is therefore GRANTED as to APMT's fraud claim against him and DENIED as to its conversion claim.

**C.  Fraud Claim**

Even assuming that Article 5's statute of limitations does not apply to APMT's fraud claim, APMT fails to state a claim. *See* Dkt. 335, ¶¶ 83–94. Washington has adopted the nine common law elements of fraud, and, at its core, a fraud claim requires a false representation of material fact. A plaintiff must allege:

> (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.

*Stiley v. Block*, 130 Wn.2d 486, 505 (1996).

Esterbrook argues that because APMT does not allege that he intended APMT to rely on the Sight Draft or that APMT actually relied on the Port's sight draft, its fraud claim against him must be dismissed. Dkt. 344 at 22. He argues that Washington law requires that the plaintiff must have relied on the alleged false representation to assert a fraud claim. *Id.*; Dkt. 358 at 9–10 (citing, *inter alia*, *Baddeley v. Seek*, 138 Wn. App. 333, 339 (2007)).

---

[5] The Court notes that *Fuji Food Products* is an unpublished opinion and does not have precedential value. The Court cites to the case for illustrative purposes only.

ORDER - 9

APMT, in response, argues that it has adequately alleged a claim of fraud.[6] Dkt. 353 at 13–15. It argues that its fraud claim does not fail because Svenska Handelsbanken—the party that relied on the Sight Draft— is not the plaintiff in this action. *Id.* at 14. It asserts that it has pled that Svenska Handelsbanken was its agent and that "the principles of agency" allow it to assert a fraud claim against Esterbrook. *Id.* APMT asserts that a principal may sue for fraud on its agent and that the Court must accept its agency allegations as true. *Id.* at 15.

But APMT has not adequately alleged a principal-agent relationship between itself and Svenska Handelsbanken. At most, APMT alleges that the bank was "APMT's financial intermediary," not that the bank was its agent. Dkt. 335, ¶ 90. Under Washington law, an agency relationship is created, either expressly or by implication, "'when one party acts at the insistence of and, in some material degree, under the direction and control of another.'" *Stansfield v. Douglas Cnty.*, 107 Wn. App. 1, 17 (2001) (quoting *Hewson Constr., Inc. v. Reintree Corp.*, 101 Wn.2d 819, 823 (1984)). As Esterbrook highlights, APMT has not alleged that Svenska Handelsbanken was subject to control by APMT. All it has alleged is that the bank was its "financial intermediary."

The nine elements of fraud require that the plaintiff, in relying upon a false representation of material fact, suffered damages. APMT has failed to allege either

---

[6] APMT additionally argues that Esterbrook's motion should be denied because the Court previously held that it was unable to conclude that its proposed fraud claim was futile when granting APMT's motion for leave to amend. Dkt. 353 at 14 n.5 (citing Dkt. 334 at 7). Rather, the Court stated that the issue of whether APMT's proposed fraud claim was futile for lack of plausible allegations was better suited for a fully-briefed motion. Dkt. 334 at 7. Nothing in that Order precludes Esterbrook's instant motion to dismiss.

(1) that it relied upon Esterbrook's allegedly false statement that APMT failed to perform one or more of the terms of the lease or (2) that Svenska Handelsbanken was its agent and relied upon Esterbrook's statement in its capacity as APMT's agent. Absent that essential element, APMT's fraud claim is inadequately alleged. Esterbrook's motion to dismiss as to APMT's fraud claim against him is, therefore, GRANTED.

**D.     Punitive Damages**

Finally, Esterbrook moves to dismiss APMT's request for punitive damages. Dkt. 344 at 23–28. Under Washington law, punitive damages are not allowed unless expressly authorized by the legislature. *See Barr v. Interbay Citizens Bank of Tampa, Fla.*, 96 Wn.2d 692, 696–97 (1981) (collecting cases). Punitive damages may be available under New York law (where Svenska Handelsbanken drew upon the LOC) in "limited circumstances where it is necessary to deter defendant and others like it from engaging in conduct that may be characterized as gross and morally reprehensible, and of such wanton dishonesty as to imply a criminal indifference to civil obligations." *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.E.2d 7308, 315–16 (1995) (internal quotations and citations omitted).

Ultimately, whether punitive damages are available in this case is a choice of law question. The Port has similarly moved for summary judgment on APMT's claim for punitive damages, Dkt. 380, which Esterbrook has joined, Dkt. 382.[7] In the interest of

---

[7] APMT argues that Esterbrook's motion to dismiss its claim for punitive damages against him is procedurally improper. Dkt. 353 at 15–17. The Court notes, without deciding the issue, that any procedural error in Esterbrook's motion is cured by his joining of the Port's motion for summary judgment.

judicial economy, the Court **RESERVES RULING** on the availability of punitive damages against the Port and Esterbrook. The Court will rule on the availability of punitive damages against the Counterclaim Defendants in a single order.

**E.      Leave to Amend**

In the event the Court finds that dismissal is warranted, the court should grant the plaintiff leave to amend unless amendment would be futile. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Because APMT's fraud claim is subject to Article 5's one-year statute of limitations, amendment would be futile. The claim is thus dismissed with prejudice.

## IV.   ORDER

Therefore, it is hereby **ORDERED** that Counterclaim Defendant Esterbrook's motion to dismiss, Dkt. 344, is **GRANTED in part** and **DENIED in part**. It is hereby further **ORDERED** that the Court **RESERVES RULING** on Esterbrook's motion to dismiss as to APMT's claim for punitive damages.

Dated this 22nd day of November, 2021.

BENJAMIN H. SETTLE
United States District Judge